

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-25-00527-CV

**BRAILLE INSTITUTE OF AMERICA**,
Appellant

v.

Jutta **BAUMGARTEN**, individually and as a Surviving Heir of the Estate of
James C. Challiss, III, Deceased,
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2025CVK000491D4
Honorable David E. Garcia, Judge Presiding

Opinion by:     Lori Massey Brissette, Justice

Sitting:        Irene Rios, Justice
                Lori Massey Brissette, Justice
                H. Todd McCray, Justice

Delivered and Filed: July 15, 2026

AFFIRMED

This is an interlocutory appeal from an order denying a special appearance of an out-of-state defendant, the Braille Institute of America. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7). After reviewing the parties' briefs and the trial court record, and after considering oral argument, we affirm the trial court's order.

## BACKGROUND

In 1921, Francz Hamilton Foss bought the mineral interests of thousands of acres of property in Webb County. Foss died in 1959, and her will created a trust. In 1961, a California probate court approved distribution in accordance with the will, directing that trust income be distributed to fifteen beneficiaries in different percentages, with each beneficiary's share to increase proportionally on the death of any other. The beneficiaries included appellant the Institute, other charities, and James Challiss, appellee Jutta Baumgarten's now-deceased husband. In 1987, both the trustee Michael Gill and his co-trustee moved to terminate the Foss trust because its mineral interests were not productive. With the explicit consent of all beneficiaries, including the Institute, in 1988 the California probate court terminated the Foss trust and ordered distribution of the trust assets to the beneficiaries.[1] According to Baumgarten, this distribution created a cotenancy to the mineral interests among the nine surviving beneficiaries, including Challiss. Baumgarten asserts that upon termination of the trust, Challiss transformed from a mere income beneficiary to a partial owner of the Webb County mineral interests.

In 2011, over two decades after the California court terminated the Foss trust, Laredo Energy IV LP determined hydrocarbons could be produced from some of the Foss mineral interests in part of Tract 16. Laredo Energy then, evidently unable to contact any of the relevant parties, used Section 64.091 of the Texas Civil Practice & Remedies Code to establish a receivership lease so that it could harvest hydrocarbons from the land and then deposit royalties into a receivership account with the Webb County clerk.[2] About three years later, in 2014, Challiss passed away, and

---

[1] The record includes the Institute's 1987 letter consenting to the trustees' proposal to terminate the trust and distribute the trust principal to the beneficiaries. The California court's 1988 order terminating the trust states the trustees "shall distribute the accumulated income *and principal* of the trust then remaining to the beneficiaries of the trust." (emphasis added).

[2] Texas law provides a mechanism for appointing a receiver when mineral interest owners cannot be located. A district court can "appoint a receiver for the mineral interest or leasehold interest under a mineral lease owned by a nonresident

his surviving spouse, Baumgarten, became heir to his estate. Baumgarten asserts she inherited Challiss's partial ownership of the Webb County mineral interests.

Gill did not learn of the lease or the account holding the royalties until 2022, when California Inheritance Group notified him that California's Unclaimed Property Division was holding over $500,000 in royalties payable to the Foss trust, specifically monies paid by Laredo Energy pursuant to the lease created via the receiver. Gill then filed a petition in Los Angeles County Superior Court requesting that he be appointed temporary trustee to marshal the royalties. The court granted Gill's petition and he became the temporary trustee in fall of 2022. Gill then filed an accounting and a petition to be appointed permanent trustee in which he asserted that though the trust that had been "dormant" until 2011,[3] the royalties belong to the revived trust. Baumgarten objected to both the accounting and to Gill's appointment as trustee. As a beneficiary of the trust, the Institute is also a party to the California litigation, but the Institute has not objected to the accounting or Gill's appointment.

In this ongoing California trust litigation, Gill and Baumgarten continue to dispute whether the trust can be revived to resume ownership of the mineral interests and gain access and dominion over the royalties received to date and to be received in the future. Gill has asserted in the California court that the 1988 termination order did not extinguish the rights of the trustees and beneficiaries with regard to these mineral interests. Gill has further asserted that Baumgarten may only be

---

or absent defendant" in actions "brought by a person claiming or owning an undivided leasehold interest under a mineral lease of land in this state and that has one or more defendants who have, claim, or own an undivided mineral interest in the same property." TEX. CIV. PRAC. & REM. CODE § 64.091. To obtain appointment of a receiver under this section, a plaintiff energy company must prove that (1) it "has made a diligent but unsuccessful effort to locate the defendant" and (2) it "will suffer substantial damage or injury unless the receiver is appointed." *Clay Expl., Inc. v. Santa Rosa Operating, LLC*, 442 S.W.3d 795, 799 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (quoting TEX. CIV. PRAC. & REM. CODE § 64.091).

[3] In Gill's accounting and petition for appointment as permanent trustee, Gill states "The Trust remained dormant until 2011, when a Court in Texas made the Webb County Order, appointing a receiver to receive new oil royalties from new production payable to the Trust (as the payor had been unable to locate the Trust)."

entitled to a percentage of the royalties from the beginning of the 2011 lease until Challiss's death in 2014, at which time—assuming the trust is still in place—Challiss's royalty interest would have passed pro rata to the remaining beneficiaries including the Institute, increasing the Institute's interest and leaving nothing to be inherited by Baumgarten. In contrast, Baumgarten asserts that because the trust was terminated in 1988 and its assets were distributed to Challiss and the other beneficiaries, upon Challiss's death in 2014 she became and remains a part owner of the mineral interests.

To address the issue of ownership of the Texas mineral interests, Baumgarten sued the Institute and five other defendants in Webb County. In her live pleading, Baumgarten asserts the following claims against the Institute: (1) trespass to try title; (2) reimbursement; (3) aiding and abetting; and (4) conspiracy. The Institute responded by filing a special appearance which the trial court denied. The Institute timely appealed the jurisdictional issue.

**PERSONAL JURISDICTION**

On appeal, the Institute argues the trial court erred in denying its special appearance because the trial court does not have specific personal jurisdiction over it. Specifically, the Institute asserts that its contacts with Texas are wholly unrelated to Baumgarten's claims against it. In contrast, Baumgarten asserts the Institute subjected itself to jurisdiction in Texas by owning Texas property and by colluding with Gill to increase its ownership interest.[4] As explained below, we conclude the trial court has specific personal jurisdiction over the Institute as to all claims.

---

[4] Baumgarten correctly concedes that the Institute is not subject to the trial court's general personal jurisdiction. The Institute is incorporated and headquartered in California. *See In re Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d 671, 679 (Tex. 2022) ("General jurisdiction requires that a defendant be 'essentially at home' in the forum state.") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

**A. Standard of Review and Applicable Law**

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law, which we review under a de novo standard. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). "When, as here, the trial court does not issue findings of fact and conclusions of law [with its special appearance ruling], we imply all relevant facts necessary to support the judgment that are supported by the evidence." *M & F Worldwide Corp.*, 512 S.W.3d 878, 885 (Tex. 2017) (quoting *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2012)).

"Texas courts may exercise personal jurisdiction over a nonresident defendant when (1) our long-arm statute authorizes it and (2) doing so comports with federal and state constitutional due process guarantees." *Goldstein v. Sabatino*, 690 S.W.3d 287, 294 (Tex. 2024). "[B]ecause Texas's long-arm statute extends personal jurisdiction as far as the federal constitutional requirements allow, the 'federal due process requirements shape the contours of Texas courts' jurisdictional reach.'" *Id.* (quoting *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016)). A state's exercise of personal jurisdiction comports with federal due process if (1) the nonresident defendant has "minimum contacts" with the state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017).

In Texas, we determine specific jurisdiction using a two-prong test inquiring as to whether "(1) the defendant has 'made minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities [in the state],' and (2) the defendant's potential liability arose from or is related to those contacts." *In re Christianson Air Conditioning & Plumbing, LLC*, 639

S.W.3d 671, 679 (Tex. 2022) (*quoting Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576 (Tex. 2007)) (alterations in original). For purposeful availment, we look solely to the actions and reasonable expectations of the defendant, requiring a plaintiff to prove that a nonresident defendant's contacts are "purposeful rather than random, fortuitous, or attenuated" and, by those contacts, the defendant "seeks a benefit, advantage, or profit from the forum state." *Id.*; *see Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790 (Tex. 2005).

The plaintiff has the initial burden to plead sufficient allegations to bring a nonresident defendant within the reach of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). If "the pleading is wholly devoid of jurisdictional facts establishing personal jurisdiction over a nonresident defendant, the plaintiff should amend the pleading in response to the special appearance." *Vertellus Holdings LLC v. Johnson*, 674 S.W.3d 675, 683–84 (Tex. App.—Houston [1st Dist.] 2023, no pet.). If the plaintiff sufficiently pleads the jurisdictional allegations, the burden then shifts to the defendant to negate all the alleged bases of personal jurisdiction. *Kelly*, 301 S.W.3d at 658. The defendant can either present evidence to disprove the plaintiff's factual allegations or assert that, even if true, the plaintiff's allegations are insufficient to establish jurisdiction. *Id.* at 659. Once a defendant has negated all potential bases for personal jurisdiction alleged by the plaintiff, the burden shifts back to the plaintiff to present evidence supporting the plaintiff's personal-jurisdiction allegations. *Yahsi v. Visor Muhendislik Insaat Turizm Gida Ve Mekanik Taahhut Ticaret Ltd. Sirketi*, 651 S.W.3d 79, 87–88 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

**B. Application**

The Institute concedes that the first prong for specific personal jurisdiction is met, namely that by its minimum contacts the Institute purposefully availed itself of the privilege of conducting

activities in Texas. *See Christianson*, 639 S.W.3d at 679. We agree. The Institute explicitly consented to the trustees' 1987 proposal to terminate the trust and distribute the trust principal to the Institute and the other beneficiaries, and the following year the California probate court terminated the trust and ordered the distribution of the trust principal to which the Institute had consented. By purposefully taking ownership of Texas real property, the Institute "reached out and created a continuing relationship in Texas," becoming "liable for obligations and expenses related to the interests," and enabling the Institute to enjoy the benefits and protections of Texas laws. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 339 (Tex. 2009); *see id.* ("Oil and gas interests are real property interests."). This satisfies the first prong for specific personal jurisdiction. *See id.* at 339–40; *Christianson*, 639 S.W.3d at 679.[5]

The Institute challenges only the second prong, arguing that its contacts with Texas are wholly unrelated to Baumgarten's claims against it. *See Christianson*, 639 S.W.3d at 679 (no specific jurisdiction unless "the defendant's potential liability arose from or is related to those contacts"); *Moki Mac*, 221 S.W.3d at 585 ("[F]or a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation.").[6] But the Institute's list of four contacts with Texas does not include its actions starting in 1987 purposefully taking and then maintaining partial

---

[5] In this interlocutory appeal from the denial of a special appearance, we consider only the jurisdictional issue presented, and we do not opine on issues that do not bear on personal jurisdiction, such as the exact nature of the Institute's interest, or the extent to which that interest or the trust's termination may have been impacted by the 2011 receivership lease. *See Trenz v. Peter Paul Petroleum Co.*, 388 S.W.3d 796, 805-06 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Instead, we look only to the Institute's purposeful contacts with Texas, concluding it purposefully availed itself of the privilege of conducting activities in Texas. *See Retamco*, 278 S.W.3d at 339.

[6] The Institute also does not argue on appeal that the trial court's exercise of jurisdiction over it fails to comport with traditional notions of fair play and substantial justice. Therefore, the Institute has waived this issue. *See LG Chem Am., Inc. v. Morgan*, 663 S.W.3d 217, 239 (Tex. App.—Houston [1st Dist.] 2020), aff'd, 670 S.W.3d 341 (Tex. 2023) (affirming denial of special appearances and concluding appellants waived argument that asserting jurisdiction over them would offend traditional notions of fair play and substantial justice).

ownership of the Texas real property previously owned by the trust. And in the trial court, Baumgarten explicitly argued that the court has personal jurisdiction over the Institute based on its admitted ownership of a percentage of the trust principal, which includes the Texas real property at issue in Baumgarten's claims. Since the trial court did not issue findings of fact and conclusions of law, we must affirm if there is any independent ground or basis that fully supports the denial of the Institute's special appearance. *See Trevino v. City of San Antonio*, 685 S.W.3d 863, 867 (Tex. App.—San Antonio 2023, no pet.). Therefore, we must determine whether each of Baumgarten's claims against the Institute arise from or relate to the Institute's continuing ownership of Texas real property. If they do, the Institute cannot obtain reversal. *See id.*

Baumgarten brings the following claims against the Institute: (1) trespass to try title; (2) aiding and abetting a breach of fiduciary duty; (3) conspiracy; and (4) reimbursement. We must consider specific personal jurisdiction with respect to each claim individually, unless all claims arise from or relate to the same forum contacts. *See Moncrief Oil*, 414 S.W.3d at 150–51; *Touradji v. Beach Capital P'ship*, *L.P.*, 316 S.W.3d 15, 26 (Tex. App.—Houston [1st Dist.] 2010, no pet.). As discussed below, we conclude that all of Baumgarten's claims relate to the same forum contacts: the Institute's actions purposefully taking and then maintaining ownership of Texas real property starting in 1987.

Baumgarten's trespass to try title claim states in full:

Gill and the Four Charities' actions have created clouds on title to the mineral producing properties in Webb County. Title resides in the Trust Beneficiaries who were distributed these assets on January 29, 1988, subject to any conveyances these beneficiaries made thereafter. This Court should enter Judgment that the termination of the Trust crystallized ownership of Foss' mineral interests in these Trust beneficiaries in accordance with the percentages set forth in the Court's January 29, 1988, Order (subject to later conveyances or inheritances) and thereby remove any cloud on title created by Gill and the Four Charities' actions.[7]

---

[7] In her live pleading, Baumgarten also explains that the Institute is one of the "Four Charities" and one of the "Trust Beneficiaries."

Central to Baumgarten's claim is her assertion that both she and the Institute took partial ownership of the Texas real property in 1988 pursuant to the California court order. And she explicitly seeks a judgment settling all ownership interests, including the Institute's interest. Therefore, there is a "substantial connection" between the Institute's forum contacts and "the operative facts of the litigation," and the Institute's potential liability is related to its forum contacts, satisfying the second prong for specific personal jurisdiction. *Moki Mac*, 221 S.W.3d at 585; *see Christianson*, 639 S.W.3d at 679; *see also Retamco*, 278 S.W.3d at 341 ("Texas has an interest in resolving controversies involving real property within its borders[.]").

The Institute counters that Baumgarten failed to point to any action taken by the Institute that clouded her claimed title. But such an action is not required for specific personal jurisdiction. The second prong "does not require proof that [Baumgarten] would have no claim 'but for' [the Institute's] forum contacts or that its forum contacts were a proximate cause of [her] injuries; instead, we ask what [Baumgarten's] claims are principally concerned with, whether [the Institute's] forum contacts will be the focus of the trial, and whether the contacts are related to the operative facts of [Baumgarten's] claims." *Publicaciones E. Impresos Paso del Norte, S. de R.L. de C.V. v. Corral*, 663 S.W.3d 286, 313 (Tex. App.—El Paso 2023, pet. denied) (quoting *TV Azteca v. Ruiz*, 490 S.W.3d 29, 52–53 (Tex. 2016)).

The Institute also argues Baumgarten failed to plead a viable trespass to try title claim. But the viability of Baumgarten's claims is outside the scope of our interlocutory review of the denial of the Institute's special appearance: personal jurisdiction is the only issue here. *See Trenz v. Peter Paul Petroleum Co.*, 388 S.W.3d 796, 806 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (holding challenges unrelated to personal jurisdiction "fall[] outside the scope" of interlocutory appeal of ruling on special appearance) (citing TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7)); *AB Land Co.*

*v. Sanders*, 695 S.W.3d 820, 827 n.3 (Tex. App.—Houston [14th Dist.] 2024, no pet.) (explaining requirements for a viable trespass to try title claim are separate from jurisdictional question of standing); *Restrepo v. All. Riggers & Constructors, Ltd.*, 441 S.W.3d 453, 455 (Tex. App.—El Paso 2014, no pet.) ("The appellants' complaints about subject-matter jurisdiction are not justiciable on appellate review at this stage of the proceedings [interlocutory appeal of denial of special appearance]."). More broadly, any inquiry into the merits of Baumgarten's claims is beyond the scope of our interlocutory review. *See Odyssea Marine, LLC v. Wilcox-Carleton*, 732 S.W.3d 323, 330 (Tex. App.—Houston [14th Dist.] 2026, no pet.) ("In determining whether the evidence shows a sufficient connection between a defendant's purposeful contacts with Texas and the operative facts of the litigation, we review the claims in question and the evidence regarding the jurisdictional facts, but we do not determine the merits of the claims.") (citing *TV Azteca*, 490 S.W.3d at 35 n.1). Therefore, we cannot reach the Institute's argument that Baumgarten has no rival claim to the Institute's interests, which gets to the merits of the Institute's potential liability. *See id.*

The Institute's forum contacts starting in 1987 also relate to Baumgarten's remaining claims. In her claim for aiding and abetting a breach of fiduciary duty, Baumgarten asserts that the Institute aided Gill in breaching his fiduciary duties as trustee and enabling his conduct which allegedly impedes Baumgarten's property interest. Specifically, Baumgarten alleges that the Institute, by aiding and abetting Gill, is seeking to expand its own ownership interest in the property at issue by defeating Baumgarten's interest. There is therefore a "substantial connection" between the Institute's forum contacts and "the operative facts of the litigation," satisfying the second prong for specific personal jurisdiction as to the aiding and abetting claim. *Moki Mac*, 221 S.W.3d at 585; *see Christianson*, 639 S.W.3d at 679. The Institute's argument that Baumgarten

failed to present evidence of any affirmative action taken to aid and abet Gill, given their concession of purposeful action in taking ownership of the mineral interests at issue, is essentially an attempt to turn their special appearance into a no-evidence motion for summary judgment relating to the aiding and abetting claim. We need not pass on whether a failure to take action can in this instance constitute aiding and abetting, as that determination is beyond the scope of this interlocutory review. *See Odyssea*, 732 S.W.3d at 330; *TV Azteca*, 490 S.W.3d at 35 n.1; TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7).

The same is true for Baumgarten's claim that the Institute conspired with Gill to breach his fiduciary duty. The Institute correctly notes that a conspiracy allegation—by itself—can be insufficient to establish personal jurisdiction. See *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 560 (Tex. 2018) ("The mere existence or allegation of a conspiracy directed at Texas is not sufficient to confer [specific personal] jurisdiction."). But here, Baumgarten's conspiracy claim also relates to the Institute's ownership of Texas real property and the very character of the property at the heart of this litigation. As stated above, Baumgarten alleges the Institute conspired with Gill at least in part to increase its ownership interest in the Texas real property at issue at the expense of Baumgarten. The Institute did not present any evidence negating the jurisdictional facts supporting the conspiracy claim alleged by Baumgarten. Thus, we are left with the assertion that the allegations as pleaded are legally insufficient to establish specific personal jurisdiction. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). We disagree. The Institute's potential liability for the conspiracy claim relates to the Institute's ownership of the Texas real property in question, since Baumgarten alleges the Institute, as a partial owner of the property interest co-owned by Baumgarten, conspired to negatively impact Baumgarten's interest. The Institute's partial ownership of the property at issue is thus substantially connected to the operative

facts of the litigation. This satisfies the second prong for specific personal jurisdiction as to the conspiracy claim. *See Moki Mac*, 221 S.W.3d at 585; *Christianson*, 639 S.W.3d at 679.

Finally, Baumgarten's claim for reimbursement states: "Baumgarten has undergone significant expenses to establish that the beneficiaries of the Trust own rights as vested, undivided mineral owners of Webb County properties, and to release them from unfavorable leases entered by receivers. The Four Charities [including the Institute] are responsible for paying their share of Baumgarten's efforts in these regards[.]" This claim seeks reimbursement for legal fees and expenses that Baumgarten incurred pursuing a different lawsuit Baumgarten filed regarding the receivership lease. Baumgarten seeks reimbursement on the basis that the Institute is a cotenant to the mineral interests in this separate case. In other words, Baumgarten's reimbursement claim is based on the Institute's actions purposefully taking and then maintaining ownership of the Texas real property in question, satisfying the second prong for specific personal jurisdiction as to that claim. *See Moki Mac*, 221 S.W.3d at 585; *Christianson*, 639 S.W.3d at 679. The Institute's argument that this is not a viable claim is, once again, beyond the scope of our interlocutory review. *See Odyssea*, 732 S.W.3d at 330; *TV Azteca*, 490 S.W.3d at 35 n.1; *Trenz*, 388 S.W.3d at 806; TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7).

We conclude the trial court has specific personal jurisdiction over the Institute for all of Baumgarten's claims. *See Christianson*, 639 S.W.3d at 679. We overrule the Institute's sole issue on appeal.

## CONCLUSION

Based on the foregoing, we affirm the trial court's order denying the Institute's special appearance.

Lori Massey Brissette, Justice